IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ALICE KILIC,

     Plaintiff,

v.

                                   CASE NO. 2:12-cv-801-MEF
                                   (WO – Do Not Publish)

HVM, L.L.C.,

     Defendant.

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Alice Kilic ("Kilic") brings this premises liability action against Defendant

HVM, L.L.C. ("Extended Stay"),[1] alleging that Extended Stay's negligent maintenance of

an external stairwell at a Montgomery, Alabama Extended Stay Hotel (the "Hotel") created

a hazardous condition that caused Kilic to slip and fall down the stairs.  Extended Stay

simultaneously filed two separate motions that are currently before the Court: (1) Extended

Stay's *Daubert* Motion to Exclude the Expert Testimony and Report of Jeffrey Gross (Doc.

#32) and (2) Extended Stay's Motion for Summary Judgment (Doc. #31).  Because Extended

Stay's Motion for Summary Judgment can be decided without reference to Plaintiff's expert

---

[1] All claims against Defendant ESA P Portfolio, L.L.C., improperly designated as Defendant throughout this litigation, were dismissed with prejudice pursuant to the parties' joint agreement as entered by this Court (Doc. #59.)

testimony, Extended Stay's Motion to Exclude will not be addressed in this opinion.[2]  The

Court has reviewed the submissions of the parties and finds that, for the reasons set forth

below, Extended Stay's Motion for Summary Judgment is due to be DENIED.

## II. JURISDICTION AND VENUE

Extended Stay removed this case to this Court from the Circuit Court of Montgomery

County, Alabama pursuant to 28 U.S.C. §§ 1441 and 1446.  Subject matter jurisdiction over

Kilic's claim is proper under 28 U.S.C. § 1332 (diversity).[3]  The parties do not contest

personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## III. THE RELEVANT FACTS

The Court has carefully considered all deposition excerpts and documents submitted

in support of and in opposition to the motion.  The submissions of the parties, viewed in the

light most favorable to the non-moving party, establish the following facts:

On March 4, 2011, Kilic checked into the Hotel and was assigned to a room on the

second floor of the complex.  She had traveled to Montgomery from Georgia for the purpose

of attending a professional meeting to develop affiliate marketing strategies.  Kilic testified

that, on previous visits to the Hotel, she had noticed the deteriorated condition of other

staircases. (Kilic Dep., Doc. #31, Ex. A.)  However, the stairs' condition did not concern her

---

[2] The Court will issue a separate order on Defendant's *Daubert* Motion to Exclude.

[3] HVM, L.L.C.'s managing members, Peter Crage and Howard Weisman, are both residents of North Carolina.  Kilic is a citizen of Georgia.  Although the Complaint contains no demand for a specific amount of damages, Kilic alleges therein that she has incurred at least $92,486.55 in medical expenses (Doc. #12), demonstrating that the requisite amount in controversy has been met.

on those previous visits.  (Kilic Dep., Doc. #31, Ex. A.)

On the visit at issue, Kilic had only used the elevator to access her room as a matter of convenience.  However, on the morning of March 5, Kilic used the stairs as she was returning to her room from a shopping trip.  The stairs were made of concrete, and an off-red steel nose and a slip-resist strip were affixed to each step.  Kilic testified that the stairs were old, dirty, moldy, and rusty.  (Kilic Dep., Doc. #31, Ex. A.)  A dark color on the stairs where moisture would collect was "plain and evident."  (Kilic Dep., Doc. #31, Ex. A.)  Not concerned that these conditions posed a threat to her immediate safety, Kilic used the same stairs again at approximately 4:00 p.m. that afternoon.  She descended on the right side of the stairs, using the hand-rail.  Kilic was not carrying anything in her hands, nor was she hurrying.  It was light outside and not raining.  Kilic was wearing sneakers.  On the next-to-last step, a piece of metal protruding vertically from the red metal stripping caught the front of Kilic's right shoe, and she fell.

Kilic admits she saw the steel nose stripping when she first went up the stairs on the morning of March 5 and acknowledged that the stripping was not covered up or obscured in any way.  (Kilic Dep., Doc. #31, Ex. A.)  However, Kilic explained that, although she had noticed the stripping generally, she had not seen any protrusions when she used the stairs that morning.  (Kilic Dep., Doc. #31, Ex. A.)  Kilic further denied having seen the vertically protruding metal that hooked her shoe until after she began to fall.  (Kilic Dep., Doc. #31, Ex. A.)

After Kilic fell, an unknown man helped her sit up.  This man then went to the front

desk to call an ambulance. An employee of the Hotel came to the location of Kilic's fall shortly thereafter, but according to Kilic did not engage in conversation with her. No one witnessed Kilic's accident. Kilic was taken by ambulance from the Hotel to Baptist Hospital in Montgomery where she was diagnosed with a fractured ankle. Kilic underwent surgery approximately ten days later in Tallahassee, Florida.

On August 9, 2012, Kilic filed suit in the Circuit Court of Montgomery County, Alabama, alleging a single claim for negligence. On September 13, 2012, Extended Stay timely removed this action to this Court. On June 14, 2013, Extended Stay filed a Motion for Summary Judgment, which the Court will address below.

## IV. LEGAL STANDARD

A motion for summary judgment looks to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court should grant summary judgment when the pleadings and supporting materials show that no genuine dispute exists as to any material fact and that the moving party deserves judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the relevant documents that "it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alteration to original). To shoulder this burden, the moving party can present evidence to this effect. *Id.* at 322–23. Or it can show that the non-moving party has failed

4

to present evidence in support of some element of its case on which it ultimately bears the burden of proof. *Id.*

If the moving party meets its burden, the non-movant must then designate, by affidavits, depositions, admissions, or answers to interrogatories, specific facts showing the existence of a genuine dispute for trial. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in his or her favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Thus, summary judgment requires the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Indeed, a plaintiff must present evidence demonstrating that she can establish the basic elements of her claim, *Celotex,* 477 U.S. at 322, because "conclusory allegations without specific supporting facts have no probative value" at the summary judgment stage. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

A court ruling on a motion for summary judgment must believe the non-movant's evidence. *Anderson*, 477 U.S. at 255. It also must draw all justifiable inferences from the evidence in the non-moving party's favor. *Id.* After the non-moving party has responded to the motion, the court must grant summary judgment if there exists no genuine dispute of material fact and the moving party deserves judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## V. DISCUSSION

Extended Stay advances only one argument in support of their motion for summary judgment, namely, that they cannot be liable for negligence because the condition that caused Kilic's fall was "open and obvious" as a matter of law.  The Court does not agree.

Under Alabama law,[4] the elements of negligence in a premises liability case "are the same as those in any tort litigation: duty, breach of duty, cause-in-fact, proximate or legal cause, and damages." *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002) (citations and quotations omitted).  A person who provides commercial or material benefit to the landowner while on the premises is considered an invitee.[5] *Ex parte Mountain Top*, 699 So. 2d at 161.  "The duty owed to an invitee is limited to hidden defects which are not known to the invitee and would not be discovered by him in the exercise of ordinary care." *Id.*  Thus, a landowner has no duty to warn of open and obvious defects of which the injured party should have been aware. *Williams v. Bruno's, Inc.*, 632 So. 2d 19, 22 (Ala. 1993).

The parties first dispute whether the test for evaluating an "open and obvious" condition is objective or subjective.  Kilic claims that the test is subjective and involves a determination of whether she "consciously appreciated" the danger posed by the condition.  Extended Stay claims that the test is objective and focuses instead on whether the danger should have been observed by a reasonably prudent plaintiff under the same or similar

---

[4] The substantive law of Alabama governs this lawsuit. *See Cash v. State Farm Fire & Cas. Co.*, 125 F. Supp. 2d 474, 477 (2000).

[5] The three classifications of persons coming onto land are invitees, trespassers, and licensees. *Ex parte Mountain Top Indoor Flea Mkt., Inc.*, 699 So. 2d 158, 161 (Ala. 1997).  It is undisputed that Kilic was an invitee of Extended Stay.

circumstances, regardless of whether it was actually appreciated. The law here is well-settled. "[I]n a premises-liability setting, we use an objective standard to assess whether a hazard is open and obvious . . . the question is whether the danger should have been observed, not whether in fact it was consciously appreciated:

> "[I]n order for a defendant-invitor in a premises-liability case to win a summary judgment or a judgment as a matter of law grounded on the absence of a duty on the invitor to eliminate open and obvious hazards or to warn the invitee about them, the record need not contain undisputed evidence that the plaintiff-invitee consciously appreciated the danger at the moment of the mishap. While *Breeden [v. Hardy Corp.*, 562 So. 2d 159 (Ala. 1990)], does recite that "[a]ll ordinary risks present are assumed by the invitee," 562 So. 2d at 160, this recitation cannot mean that the invitor's duty *before* a mishap is determined by the invitee's subjective state of mind *at the moment of* the mishap. This Court has expressly rejected the notion that an invitor owes a duty to eliminate open and obvious hazards or to warn the invitee about them if the invitor '*should anticipate the harm despite such knowledge or obviousness*.' *Ex parte Gold Kist, Inc.,* 686 So. 2d 260, 261 (Ala. 1996) . . . ."

*Jones Food Co. v. Shipman*, 982 So. 2d 355, 362 (Ala. 2006) (quoting *Sessions,* 842 So. 2d at 653–54). The relevant inquiry is not whether Kilic was aware of or "consciously appreciated" the danger posed by the metal protrusion. Rather, the proper question is whether Kilic *should* have been aware of the hazard's existence and any danger it may have posed.

Extended Stay primarily points to Kilic's own deposition testimony to argue that Kilic should have been aware of the metal protrusion before it caused her injury. First, they point to Kilic's admission that nothing obscured her view of the step or the red metal steel nose attached to it both times she used the stairs on the date of her fall. Second, Extended Stay points to Kilic's admission that the stairs were old, dirty, moldy, and rusty, that a

discoloration where moisture would collect was "plain and evident,"[6] and that she decided

to use the stairs despite these conditions.   Finally, Extended Stay infers from Kilic's

admission that, because she saw the metal perforation *as* she fell, a reasonable person would

have observed it under the same or similar circumstances *before* the fall.   Cumulatively,

Extended Stay argues that this evidence shows that the danger posed by the hazardous

condition was open and obvious to Kilic, and, as a result, they had no duty to warn her

because a reasonable person under the circumstances would have been aware of its existence

and the danger it posed.

To support this argument, Extended Stay directs the Court to *Dolgencorp v. Taylor*,

28 So. 3d 737 (Ala. 2009).  In *Dolgencorp*, the plaintiff brought negligence and wantonness

claims after tripping over unopened cases of merchandise on the floor at a Dollar General

retail discount store.  *Id.*  After trial, a jury returned a verdict in favor of the plaintiff.  *Id.* at

740.  Using the aforementioned objective standard, the Alabama Supreme Court reversed the

trial court's judgment and held that, as a matter of law, unopened boxes in an aisle constitute

an "open and obvious" hazard.  *Id.* at 745.  In so holding, the *Dolgencorp* Court focused on

the "knee or thigh high" size of the boxes, the fact that there was no indication the boxes

were hidden from view, the plaintiff's admitted awareness of the "cluttered" condition of the

---

[6] The parties dispute whether Kilic admitted that the stairs' moldy, rusty, old, dirty condition was "plain and evident" or whether the discoloration where moisture collected was "plain and evident."  At summary judgment, it is incumbent upon the Court to view the evidence in the light most favorable to the non-moving party, which in this case is Kilic.  Thus, adhering to this directive, the Court concludes that Kilic's comments were addressing the specific discoloration of the steps at issue, not the general condition of the stairs.  In any event, such a dispute is one of fact that should be reserved for trial, further demonstrating that summary judgment is inappropriate here.

store and her questions to store management about the "boxes and stuff," and her own testimony that she had maneuvered around similar boxes of merchandise in the same store on the same day she fell. *Id.* at 744–45.

Extended Stay views *Dolgencorp* as authority for the proposition that Kilic's awareness of the staircase's deteriorated condition establishes that the specific metal protrusion on the subject step was open and obvious as a matter of law. Extended Stay's argument, however, fails to distinguish between awareness of the general deteriorated condition of the stairs and awareness of the specific hazard that caused the fall. In *Dolgencorp*, the plaintiff admitted that, *prior* to her fall, she was aware of, and had even maneuvered around, the same type of boxes of merchandise that caused her fall in the aisles of the same store shortly before she fell. *Dolgencorp*, 28 So. 3d at 744. In this case, although Kilic admits that she was aware of both the dirty, moldy, rusty, and old condition of the steps and the existence of the red metal stripping, there is no admission by Kilic that she was aware of the specific metal protrusion on the step that allegedly caused her fall prior to her fall. Moreover, Extended Stay has presented no evidence that Kilic maneuvered around similar protrusions on the same stairs that day or questioned management about the existence of raised pieces of metal on other occasions prior to her fall, as the plaintiff did in *Dolgencorp*. In fact, Kilic testified to the contrary, specifically, that she had not maneuvered to avoid any protrusions when she used that same staircase prior to, but on the same day, as her fall.

Extended Stay also relies on *Dolgencorp* to argue that the general deteriorated

9

condition of the stairs transformed all specific defects on the stairs into open and obvious

hazards as a matter of law.  The Court does not agree.  As a general matter, premises liability

requires landowners to maintain their premises in a reasonably safe condition.  *See Maddox*

*v. K-Mart Corp.*, 565 So. 2d 14, 15 (Ala. 1990).  The landowner is not the insurer of the

invitee's safety, and there is no presumption of negligence simply because the injured is an

invitee.  *See Ex parte Mountain Top*, 699 So. 2d at 161.  Extended Stay argues that, because

Kilic was aware of the general deteriorated condition of the stairs, she should have been

aware of the specific protrusion that caused the injury.  Put differently, Extended Stay

equates Kilic's admitted awareness of the general deteriorated condition of the stairs to

awareness of all defects these stairs may have contained that could have posed a risk of

injury to her.  The Court will not impute such broad knowledge to Kilic, absent evidence

suggesting otherwise, particularly when there is evidence that the deteriorated condition of

the stairs was a result of Extended Stay's own inadequate maintenance.  Indeed, if the court

were to accept Extended Stay's argument, it would effectively incentivize an invitor to so

inadequately maintain its premises that when an invitee is injured, it can simply claim that

its self-imposed deteriorated premises were so hazardous that all defects were "open and

obvious," and, therefore, it owed no duty to its injured invitees.  The Court does not believe

the law intends such a result.

The Court finds this case more in line with *Wal-Mart Stores, Inc. v. McClinton*, 631

So. 2d 232 (Ala. 1993).  In *McClinton*, the plaintiff tripped over a piece of wood molding

protruding approximately 6 inches into the aisle from a gun cabinet.  *Id.* at 233.  At trial, the

plaintiff testified that he had not seen the protrusion before falling and only realized what he had tripped on after he fell. *Id.* The jury returned a verdict in favor of the plaintiff and the defendant appealed, arguing that the plaintiff failed to establish a prima facie case of negligence because the protrusion was open and obvious as a matter of law. *Id.* The Alabama Supreme Court disagreed, stating "[w]hile it is evident that McClinton saw the display cabinet, it is not evident that he knew, or should have known, or that he appreciated, the danger caused by the fact that the cabinet and its molding protruded into the aisle." *Id.* at 235.

This case illustrates the distinction Extended Stay fails to acknowledge: being aware of the general condition of the stairs does not establish that a reasonable person should be aware of the specific hazard that caused the fall. *See Hatfield v. Kmart Corp.*, 2005 WL 3115288, *3 (M.D. Ala. Nov. 18, 2005) (denying summary judgment where plaintiff tripped over bottom part of clothing rack, rejecting defendant's argument that plaintiff's admission that she saw a clothing rack was "fatal to her case because any reasonable person would have known that the clothing rack had legs"). As in *McClinton*, it was clear that Kilic saw the deteriorated condition of the stairs, but it is not evident that she knew or should have known of the danger caused by the metal steel nose protruding vertically into her path. This inference is bolstered by the fact that she had not seen the protrusion until after it caught the front of her shoe. And, although not dispositive, undisputed testimony that the plaintiff had not seen the condition before falling persuades the Court that a reasonable person under these circumstances would not have seen the condition. *See, e.g.*, *Ryles v. Wal-Mart Stores East*

*L.P.*, 2004 WL 3711972, at *4 (M.D. Ala. Dec. 16, 2004);   *Blizzard v. Food Giant Supermarkets, Inc.*, 196 F. Supp. 2d 1202, 1208 (M.D. Ala. 2002); *Cotten v. St. Bernard Preparatory Sch.*, 20 So. 3d 157, 162 (Ala. 2009); *Harley v. Bruno's Supermarkets, Inc.*, 888 So. 2d 525, 527 (Ala. 2004)*; McClinton*, 631 So. 2d at 235*;  Williams v. Bruno's Inc.*, 632 So. 2d 19, 22 (Ala. 1993).

Finally, Extended Stay argues that the condition was open and obvious because nothing obscured Kilic's view of the protrusion.  While the concealment of a hazard is evidence that it was not open and obvious, *see Howard v. Andy's Store for Men*, 757 So. 2d 1208 (Ala. Civ. App. 2000), the fact that the condition was in plain view does not automatically establish that it was open and obvious as a matter of law.  *See Blizzard*, 196 F. Supp. 2d at 1208 ("[T]he court must conclude that Blizzard's testimony does not entitle Food Giant to summary judgment because she could have been watching where she was going, but simply not looking at the floor.").  In *McClinton*, for example, the court found the existence of a fact issue despite the absence of anything obscuring the plaintiff's view of the hazard.   Moreover, the Court also does not agree with Extended Stay that the condition's size is irrelevant.  While the Court agrees that a potential hazard's small size does not preclude a finding that the condition was open and obvious as a matter of law, *see Sheikh v. Lakeshore Found.*, 64 So. 3d 1055, 1061–62 (Ala. Civ. App 2010), size can certainly be a factor in determining whether a reasonable invitee under the same or similar circumstances should have observed and appreciated the hazard.  Here, the protrusion's small size weighs against finding the hazard open and obvious as a matter of law.

"[S]ummary judgment is rarely appropriate in negligence and personal injury cases," *Ex parte Mountain Top*, 699 So.2d at 161, and "the question of whether a danger is open and obvious is generally one of fact." *Andy's Store For Men*, 757 So. 2d at 1211 (quotation and citation omitted).  Alabama courts have "held that summary judgment is proper on the issue of whether a defect was open and obvious when the *undisputed* evidence shows that the plaintiff was aware of the danger, appreciated the danger, and acted more carefully because of the perceived danger." *Harding v. Pierce Hardy Real Estate*, 628 So. 2d 461, 463 (Ala. 1993) (emphasis in original).  Viewing the evidence and reasonable inferences in the light most favorable to Kilic, the Court finds that there is a dispute of fact as to whether Kilic should have been aware of the metal protrusion.  Specifically, there is sufficient evidence from which a reasonable jury could find that the condition that caused Kilic's fall was not open and obvious.  Thus Extended Stay's Motion for Summary Judgment must fail.

## VI. CONCLUSION

For the reasons stated above, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Doc. # 31) is DENIED.

DONE this the 23rd day of September, 2013

                                    /s/ Mark E. Fuller
                              UNITED STATES DISTRICT JUDGE